**FORM 104 (08/07)**

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

**PLAINTIFFS** (Names and Addresses)

PDR ACQUISITION LLC, ET AL.

**DEFENDANTS** (Names and Addresses)

DANIEL W. SHELLEY, SONIA DIAZ-ASENCIO, THE COMMUNITY PROPERTY PARTNERSHIP COMPRISED BETWEEN THEM, AND MEDIO MUNDO, INC.

**ATTORNEYS** (Firm Name, Address, and Telephone No.)
JUAN A. CUYAR COBB, ESQ.
FERNANDEZ, COLLINS, CUYAR & PLA
P.O. BOX 9023905, SAN JUAN, PUERTO RICO 00902-3905 / TEL. NO. 787-977-3772

**ATTORNEYS** (If Known)
ERIC A. TULLA, ESQ.
RIVERA, TULLA & FERRER
50 QUISQUEYA, SAN JUAN, PUERTO RICO, 00917-1212 / TEL. NO. 787-753-0438

**PARTY** (Check One Box Only)
☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor    ☒ Other
☐ Trustee

**PARTY** (Check One Box Only)
☐ Debtor      ☐ U.S. Trustee/Bankruptcy Admin
☐ Creditor    ☒ Other
☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

INJUNCTIVE RELIEF - FED.R.CIV.P.65 - FED.R.BANKR.P. 7065
SPECIFIC PERFORMANCE - 31 P.R. LAWS ANN. § § 3373 ET AL.

| NATURE OF SUIT |
|---|
| (Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.) |

**FRBP 7001(1) - Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) - Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) - Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) - Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) - Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) - Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(6) - Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) - Injunctive Relief**
☐ 71-Injunctive relief - imposition of stay
☒ 72-Injunctive relief - other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case - 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

☒ Check if this case involves a substantive issue of state law        ☐ Check if this is asserted to be a class action under FRCP 23

☐ Check if a jury trial is demanded in complaint        Demand $

**Other Relief Sought**

FORM 104 (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>MARINA OLDCO. | | BANKRUPTCY CASE NO.<br>12-10295 (ESL) |
| DISTRICT IN WHICH CASE IS PENDING<br>PUERTO RICO | DIVISIONAL OFFICE | NAME OF JUDGE<br>HON. ENRIQUE S. LAMOUTTE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

| DATE<br>2/3/2014 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>JUAN A. CUYAR COBB, ESQ. |
|---|---|

Print Form

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint. Addresses should be listed for all Plaintiffs and Defendants.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>MARINA OLDCO.,<br><br>       Debtor.<br><br>PDR ACQUISITION LLC, ET AL., Plaintiffs<br><br>       vs.<br><br>DANIEL W. SHELLEY, SONIA DIAZ-ASENCIO, THE CONJUGAL PARTNERSHIP COMPRISED BETWEEN THEM, AND  MEDIO MUNDO, INC. , Defendants. | Case No. 12-10295 (ESL)<br><br>Chapter 11<br><br><br><br>Adv. Proc No. 14-_____ (ESL)<br><br>Injunctive Relief<br><br>Specific Performance |

## **VERIFIED COMPLAINT**

TO THE HONORABLE ENRIQUE S. LAMOUTTE,
CHIEF UNITED STATES BANKRUPTCY JUDGE:

      PDR Acquisition LLC (together with the PBF Entities and the Additional PBF Entities, collectively, the "Purchaser" or the "Plaintiff"), the Court-approved Purchaser of substantially all of the assets of the Debtor and certain non-Debtor affiliates pursuant to the Court's Order Confirming the First Amended Joint Chapter 11 Plan Proposed by the Debtor, FirstBank Puerto Rico, and PBF-TEP Acquisitions, Inc. [Docket No. 172] (the "Confirmation Order", enclosed herein as Exhibit A)[1] and all Definitive Documentation approved by the Court pursuant thereto, entered in the above-captioned bankruptcy case (the "Case") on May 30, 2013 and effective as of the same date, hereby respectfully submits this complaint for (i) injunctive

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Confirmation Order.

relief and (ii) specific performance in connection to the actions of Mr. Daniel Shelley, his spouse Sonia Diaz-Asencio and the conjugal partnership comprised between them, and Additional Disclosure Entity known as Media Mundo, Inc. ("MMI" and, together with the foregoing defendants, the "Defendants"), in violation of the confirmed Plan, the Confirmation Order, and the Definitive Documentation approved by the Court in connection therewith. Hereby, the Purchaser alleges and prays for relief as follows:

## A.    Jurisdiction and Venue

1.    This Court has jurisdiction over the causes of action contained herein pursuant to 28 U.S.C. § 157(a),(b)(1) and § 1334, as the same arise in a case under the Bankruptcy Code. Further, this Court retained jurisdiction of this matter pursuant to par. 64 of the Confirmation Order. [Docket No. 172]. In connection thereto, Article 11 of the Plan provides, in its pertinent part, that the Court shall retain jurisdiction, among others, to (i) "issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any entity with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court"; (ii) "hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan, the Confirmation Order, the Term Sheet, the Additional Disclosure Entity Representations and Warranties, the Cacimar Agreement, the Non-Compete Agreement, the Quitclaim Agreement … or any agreement, instrument, or other document governing or relating to any of the foregoing"; (iii) "take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate this Plan or to maintain the integrity of this Plan following consummation"; and (iv) "determine any other matters that may arise in connection with or are related to this Plan, the Confirmation Order, the Sale, the Additional Disclosure Entity Representations and Warranties, the Cacimar Agreement, the Non-Compete

2

Agreement, any and all of the Definitive Documentation, or any other contract, instrument, release or other agreement or document related to this Plan." [Docket No. 172-2].

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and § 1409, inasmuch as all events or omissions giving rise to the claims contained herein occurred within the territory of this jurisdictional district.

## B.      The Parties

3.      The Purchaser is the Court-approved purchaser of substantially all of the assets of the Debtor and certain non-Debtor affiliates pursuant to the Confirmation Order. Purchaser entity PDR Acquisition LLC is a Puerto Rico limited liability company. The Purchaser's principal place of business is in Fajardo, Puerto Rico.

4.      Mr. Shelley is a resident of Puerto Rico, who directly or indirectly has a majority ownership and/or controlling interest in the Debtor and the non-Debtor Affiliates, as well as the PdR Group Members, and the Additional Disclosure Entities, of which MMI is a part of. Ms. Sonia Diaz-Asencio ("Mrs. Diaz") is the spouse of Mr. Shelley, and a PDR Executive, as defined in the Additional Disclosure Entity Representations and Warranties. The Conjugal Partnership comprised by Mr. Shelley and Mrs. Diaz is included herein as an entity liable for amounts that may be awarded in favor of the Purchaser for violation of the Confirmation Order, the Plan Injunction, the Non-Compete Agreement, and any and all other Definitive Documentation, such as costs and attorneys' fees, as may be determined by the Court.

5.      MMI is a corporation organized and doing business pursuant to the laws of the Commonwealth of Puerto Rico. Upon information and belief, MMI's principal place of business is in Fajardo, Puerto Rico. MMI is directly or indirectly owned and/or controlled by Mr. Shelley. MMI is one of the Additional Disclosure Entities pursuant to that certain Agreement Pertaining to Certain Representations and Warranties of the Additional Disclosure

3

Entities in Connection with the Acquisition of Marina Puerto del Rey dated April 18, 2013 (the

"Additional Disclosure Entity Representations and Warranties", filed with the Plan Supplement).

[Docket No. 147].

**C.      Facts Relevant to All Causes of Action**

　　　　**(i)      The Bankruptcy Case**

　　　　　　6.      On December 28, 2012, the Debtor filed a voluntary petition for relief

under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

　　　　　　7.      On April 18, 2013, the Purchaser, the Debtor, and certain non-Debtor

entities executed that certain Term Sheet (the "Term Sheet") for the purchase of the Purchased

Assets (as defined therein), which was filed with the Court under seal. [Dockets No. 94, 95].

　　　　　　8.      As part and parcel of the Sale contemplated in the Term Sheet, and as an

explicit and material condition to the Purchaser's willingness to enter into and consummate the

same, the Purchaser required the Debtor's direct or indirect majority and/or controlling

shareholder, Mr. Shelley, and various entities owned and/or controlled by Mr. Shelley (i.e., the

Additional Disclosure Entities, including MMI) to provide full, accurate, and forthright

disclosure and transparency as to whether such parties held any interest, ownership or control

whatsoever in any and all real property within a five (5) mile radius of certain Purchased Assets

(i.e., the "Radius Property").

　　　　　　9.      The Purchaser's acquisition of an ongoing operation of the Marina under

the Confirmation Order was and is premised upon Mr. Shelley neither competing nor interfering

with the Purchaser, and for the Purchaser to have complete disclosure of all properties within a

5-mile radius of the Purchased Assets so that the Purchaser can evaluate prior to the closing of

the acquisition of the Purchased Assets any real estate directly or indirectly connected or

associated to Mr. Shelley, and in making such evaluation, require where necessary the sale or

4

transfer of any property within such 5-mile radius before said closing of the acquisition. For such reason, the Additional Disclosure Entity Representations and Warranties were painstakingly negotiated by the parties in connection with the transaction – as the Purchaser expressly conditioned its willingness to enter into the transaction upon nothing less than full, complete, and forthright disclosure by Mr. Shelley concerning the Purchased Assets, in particular whether Mr. Shelley (and/or any entity controlled by him) "directly or indirectly owned or controlled" any Radius Property.

10.     Accordingly, on April18, 2013, Mr. Shelley, the PdR Executives, and the Additional Disclosure Entities including MMI, executed and delivered to the Purchaser the Additional Disclosure Entity Representations and Warranties. Among many reasons, the Purchaser was highly concerned about competing with Mr. Shelley or Mr. Shelley interfering with the strategic objectives pertaining to the Purchased Assets. For example, some of the Purchased Assets where within the Cayo Largo Resort, which had various restrictions and other covenants that included cooperative understandings of the various owners within the Cayo Largo Resort community of properties, which included development of the properties, and the Purchaser was highly concerned by potential adverse activities that could be conducted by Mr. Shelley that may be detrimental to the Purchaser.

11.     On April 29, 2013, the Debtor, FirstBank Puerto Rico ("FirstBank"), and the Purchaser filed their joint chapter 11 plan (as subsequently amended and supplemented, the "Plan", enclosed herein as Exhibit B). [Docket Nos. 99, 146, 147].

12.     On May 23, 2013, the Plan Supplement was filed with the Court. [Docket No. 147]. The Plan Supplement includes those agreements which are part and parcel of the settlement treatment afforded to the Debtor's equity holder (Mr. Shelley) and any and all non-Debtor affiliates thereof under the Plan, including (i) the Cacimar Agreement; (ii) the Non-

5

Compete Agreement; (iii) the Quitclaim Agreement; and (iv) the Additional Disclosure Entity

Representations and Warranties.  See Plan Supplement, enclosed herein as Exhibit C. [Docket

No. 147].

13.     On May 30, 2013, the Court entered the Order Confirming the First

Amended Joint Chapter 11 Plan Proposed by the Debtor, FirstBank Puerto Rico, and PBF-TEP

Acquisitions, Inc. (the "Confirmation Order").  [Docket No. 172].  On that same date, the

Effective Date of the Plan occurred; the Plan has been substantially consummated, and the

Confirmation Order, entered nearly eight months ago, is final and non-appealable.

14.     Pursuant to the Plan and the Confirmation Order, as well as the other

Definitive Documentation approved by the Court in connection therewith, the Court provided

for, approved, and directed, among other things, the acquisition by the Purchaser of all of the

Purchased Assets, "free and clear" to the fullest extent permitted under the Bankruptcy Code.[2]

The Plan and the Confirmation Order implemented an injunction, effective as of the Effective

Date, requiring all parties to comply with, and to refrain from interfering with, the Plan and the

Confirmation Order (the "Plan Injunction"):

> Injunction Against Interference with Plan
>
> Except as otherwise provided in this Plan, upon entry of the
> Confirmation Order, all holders of Claims against or Equity
> Interests in the Debtor, and other parties in interest, along with any
> current   or   former   officers,   directors,   employees,   agents,
> representatives,  partners,  limited  partners,  members,  trustees,
> manages,  affiliates,  parents,  subsidiaries,  attorneys,  auditors,
> appraisers,  accountants,  financial  advisors,  investment  bankers,
> consultants,  or  other  professionals  of  any  of  the  foregoing  and  any
> entity  controlling  or  controlled  by  any  of  the  foregoing  and  any
> predecessors,  successors  and  assigns  of  any  of  the  foregoing,  shall

---

[2]   This summary of certain salient provisions of the Confirmation Order and certain other Definitive
Documentation is provided for descriptive purposes only and, accordingly, is qualified in entirety by
reference to the terms and provisions of the applicable Definitive Documentation.

CHAR2\1568370v1

be enjoined from seeking to oppose, delay, interference or otherwise frustrate implementation or consummation of this Plan.

Plan, 9.3.

15.    Pursuant to the Confirmation Order, the Court retained jurisdiction over a broad range of post-confirmation matters.  Specifically, paragraph 64 of the Confirmation Order provides:

> Retention of Jurisdiction. The Court (and, in the event the Court is unable or unwilling, the United States District Court for the District of Puerto Rico) will retain jurisdiction over the matters set forth in Article 11 of the Plan and section 1142 of the Bankruptcy Code (including, without limitation, with respect to any disputes (if any) from and after the date of entry of this Confirmation Order with respect to the Additional Disclosure Entity Representations and Warranties, and pertaining to the Term Sheet, Cacimar Agreement, Non-Compete Agreement, Quitclaim Agreement, Deed of Purchase and Sale, and other Definitive Documentation as and to the extent set forth in Article 11 of the Plan). See par. 64 of the Confirmation Order, at p. 61 of Docket No. 172.

16.    Further, pursuant to Article 11 of the Plan, the Court retained jurisdiction with respect to each of the following (among other things):

> On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction, to the fullest extent permissible under law, over all matters arising in, arising under, or related to the Chapter 11 Case and this Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:
>
> (f)    To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any entity with the consummation, implementation or enforcement of this Plan, the Confirmation Order or any other order of the Bankruptcy Court;
>
> (i)    To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of this Plan, the Confirmation Order, the Term Sheet, the Additional Disclosure Entity Representations and Warranties, the Cacimar Agreement, the Non-Compete Agreement, the Quitclaim Agreement … or any

CHAR2\1568370v1

agreement, instrument, or other document governing or relating to any of the foregoing;

(j)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate this Plan or to maintain the integrity of this Plan following consummation;

(k)     To determine any other matters that may arise in connection with or are related to this Plan, the Confirmation Order, the Sale, the Additional Disclosure Entity Representations and Warranties, the Cacimar Agreement, the Non-Compete Agreement, any and all of the Definitive Documentation, or any other contract, instrument, release or other agreement or document related to this Plan. Plan, Article 11.

17.     In addition to the obligations and restrictions imposed upon Mr. Shelley and the Additional Disclosure Entities pursuant to the Plan Injunction, the Confirmation Order, by approving the Additional Disclosure Entity Representations and Warranties and the Non-Compete Agreement, also "so orders" Mr. Shelley's and the Additional Disclosure Entities' compliance with such Definitive Documentation.[3]   Reflective of the foregoing, pursuant to the Confirmation Order, the Court has retained jurisdiction to enforce all such Definitive Documentation.[4]

(ii)     **The Additional Disclosure Entity Representations and Warranties**.

18.     In connection with the negotiation of the Plan and as an express and material condition to the Purchaser's willing to enter into the Sale transaction and fund the Plan, the Purchaser required Mr. Shelley, personally and on behalf of each of the Additional Disclosure Entities (all of which are controlled by Mr. Shelley, as represented therein), to execute and deliver to the Purchaser on April 18, 2013 the Additional Disclosure Entity

---

[3]     See Confirmation Order, 1, 6.
[4]     See Confirmation Order, (BB).

8

Representations and Warranties.[5]   The Additional Disclosure Entity Representations and Warranties were painstakingly negotiated by the parties in connection with the transaction – as the Purchaser expressly conditioned its willingness to enter into the transaction upon nothing less than full, complete, and forthright disclosure by Mr. Shelley concerning the Purchased Assets, in particular whether Mr. Shelley (and/or any entity controlled by him) "directly or indirectly owned or controlled" any Radius Property.   Reflective of the foregoing, the Additional Disclosure Entity Representations and Warranties include the following language:

> Effective as of the date hereof, the Additional Disclosure Entities acknowledge that the Additional Disclosure Entity Representations and Warranties are necessary to, and a material deliverable of, the Transaction, **absent which the Purchaser would not execute the Term Sheet or effectuate the Closing**;

> The Additional Disclosure Entities acknowledge that, effective as of the Closing in accordance with the Term Sheet, the Plan, and the Definitive Documentation, it is the intent of the Transaction that the PdR Group and the Additional Disclosure Entities shall not retain any claims or interests whatsoever in connection with the Purchased Assets;

> The Additional Disclosure Entities have no knowledge of any information or claim that would be contrary to the representations and warranties of the PdR Group Members set forth in the following Sections 2.(3)(a)-(f) of the Term Sheet,[6] specifically . . . 2.(3)(d). Any real estate property that is within a five (5) mile radius of Property #2 (the "Radius Property") that is directly or indirectly owned or controlled by any of the PdR Group Members or any of the Additional Disclosure Entities, has been fully disclosed to the Purchaser by the PdR Group Members or the Additional Disclosure Entities, as depicted graphically on Schedule

---

[5]   The Purchaser also required the execution of the Additional Disclosure Entity Representations and Warranties by the PdR Executive who include (in additional to Mr. Shelley) his spouse, and Jose Luis Novas Dueno, Esq., who upon information and belief served or serves as the Secretary of the Debtor during the Case (and, possibly, as of the date hereof), and in addition has purported to serve as counsel during the Case to the Debtor, Mr. Shelley, and/or some or all of the Additional Disclosure Entities.

[6]   Pursuant to the Court Order dated April 26, 2013, the Term Sheet was submitted to the Court under seal. [Docket No. 95]. If requested by the Court, the Purchaser is prepared to provide the Court with an additional courtesy copy of the Term Sheet on a confidential basis, in accordance with the Court's sealing order.

A and Schedule B to the Term Sheet, which Schedule A and Schedule B the PdR Group Members and the Additional Disclosure Entities represent, warrant, and certify is a true and correct schematic depiction in all respects (other than the absence from Schedule B of the "cantera" property of PdR, located approximately four (4) miles south of the Marina, which corresponds to "No. 7" on "Schedule A" filed by the Debtor in the Case (which property has been disclosed to the Purchaser, and which property is not included in the Purchased Assets), other than as set forth in Schedule G, and other than Schedule A and Schedule B not being drawn to scale). **The PdR Group Members and the Additional Disclosure Entities have fully disclosed all Radius Property to the Purchaser, and such full disclosure is a material inducement to the Purchaser entering into the Term Sheet and the Purchaser's willingness to consummate the Transaction. For the avoidance of doubt and as provided in this Term Sheet, and assuming the accuracy of the Additional Disclosure Entity Representations and Warranties concerning the ownership of the Purchased Real Property, no real property other than the Purchased Real Estate is to be purchased by the Purchaser.**

Additional Disclosure Entity Representations and Warranties, ¶¶ 11, 9, 8 (emphasis supplied).

(iii)    **The Non-Compete Agreement and the Cacimar Agreement**.

19.    As a further measure to ensure the veracity of (and give effect to) the Additional Disclosure Entity Representations and Warranties, and to protect the Purchaser in the event of any disclosure violations by Mr. Shelley, the Purchaser also required, as a material component and condition to the Purchaser's willingness to enter into the Sale transaction, the execution by Mr. Shelley and the Additional Disclosure Entities of the Non-Compete Agreement.  The Non-Compete Agreement, approved by the Court pursuant to the Confirmation Order,[7] provides, in pertinent part:

WHEREAS, the Non-Compete Agreement Parties acknowledge and agree that (i) **the covenants and agreements set forth in this Non-Compete Agreement are a material inducement to, and a condition precedent to, the willingness of the Purchaser to**

---

[7] See Confirmation Order, (Y).

CHAR2\1568370v1

**enter into and consummate the Definitive Documentation, as
well as consent to and co-sponsor the Plan**, (ii) the Non-
Compete Agreement Parties shall receive substantial direct and
indirect benefits by the consummation of the transactions
contemplated by the Definitive Documentation (including the
benefit of the Releases), and (iii) **the Purchaser would not obtain
the benefit of the bargain set forth in the Definitive
Documentation, and as provided in the Plan, as specifically
negotiated by the parties thereto (including specifically the full
benefit of the purchase of the Purchased Assets) if any of the
Non-Compete Agreement Parties breached the provisions of
this Non-Compete Agreement**; . . .

The PdR Executives, the PdR Group Members, and the Additional
Disclosure Entities acknowledge and agree that such parties' past
services to the Marina were unique in nature and that the Marina
would be **irreparably damaged if any of such parties were to,
directly or indirectly, interfere with or otherwise provide
similar services to any person or entity competing with the
Marina**. In further consideration of the benefits received by the
PdR Executives, the PdR Group Members, and the Additional
Disclosure Entities under the Plan and the other Definitive
Documentation . . . **and in order to protect the value of the
Purchased Assets (including, without limitation, the goodwill
inherent in such assets as of the date hereof), the PdR
Executives, the PdR Group Members, and the Additional
Disclosure Entities agree that, as of and after the Effective
Date, such parties: . . . (iii) shall be prohibited from interfering
or attempting to participate in the management, operations or
other matters pertaining to the Marina or the Purchased
Assets; (iv) shall be required to reasonably cooperate with the
Purchaser in respect of the Purchased Assets** . . . .

Non-Compete Agreement, Introduction, 2. In addition, the Non-Compete Agreement provides

for the submission to jurisdiction before this Court and waiver of any challenge to venue by Mr.

Shelley and the Additional Disclosure Entities:[8]

Each of the Non-Compete Agreement Parties hereby irrevocably
submits to the exclusive jurisdiction of the United States
Bankruptcy Court for the District of Puerto Rico, or if the
Bankruptcy Court is unwilling to exercise jurisdiction or is not
available, then the United States District Court for the District of

---

[8] See Non-Compete Agreement, 4(h).

CHAR2\1568370v1

Puerto Rico, over any suit, action or proceeding arising out of or
relating to this Non-Compete Agreement . . . .

Non-Compete Agreement, 4(h).   Further, with respect to enforcement of remedies by the

Purchaser in the event of a breach or threatened breach of the Non-Compete Agreement by Mr.

Shelley and/or the Additional Disclosure Entities (including MMI), the Non-Compete

Agreement provides:

> [U]pon the execution and delivery of this Non-Compete
> Agreement by the Non-Compete Agreement Parties, the approval
> of this Non-Compete Agreement by the Bankruptcy Court and the
> Closing, this Non-Compete Agreement shall be the valid and
> binding obligation of the Non-Compete Agreement Parties,
> enforceable in accordance with its terms.
>
> …
>
> The parties hereto agree and acknowledge that the PdR
> Executives', the PdR Group Members', and the Additional
> Disclosure Entities' breach of any term or provision of this Non-
> Compete Agreement **may materially and irreparably harm the
> Purchaser and/or its affiliates, that money damages may not be
> an adequate remedy for any breach of the provisions of this
> Non-Compete Agreement, and that the Purchaser and/or its
> affiliates in addition to any other remedies it may have at law
> or in equity may be entitled to specific performance and/or
> other injunctive relief** from any court of law or equity of
> competent jurisdiction in order to enforce or prevent any violations
> of the provisions of this Non-Compete Agreement, and may seek
> the waiver of any requirement of posting a bond or deposit.

Non-Compete Agreement, 4(a), 4(g).   Even further reflective of the centrality of the Additional

Disclosure Entity Representations and Warranties and the Non-Compete Agreement to the

overall Sale transaction, the Cacimar Agreement (which sets forth the terms of monetary

consideration received by Mr. Shelley in settlement of his and his affiliated entities' on account

of his prepetition equity interests in the Debtor under the Plan), expressly notes that the

Purchaser's willingness to enter into the Cacimar Agreement and provide such funding to Mr.

12

Shelley (through his affiliate entity Cacimar) is "in consideration of" the Non-Compete Agreement, among other deliverables.[9]   Pursuant to and as reflected in the Confirmation Order:

> The Cacimar Agreement is an integral component of the global settlement of issues by and among the Purchaser, the Additional Disclosure Entities, FirstBank, and the PdR Group Members related to the Purchased Assets and provides certainty with respect to issues related to the Sale.   The Cacimar Agreement has been validly executed, with full corporate authority by each party thereto (and, for the avoidance of doubt, Mr. Daniel Shelley has and is hereby deemed to have full corporate authority to execute the Cacimar Agreement on account of the PdR Group Members and the Additional Disclosure Entities (including Mr. Shelley's spouse, and their conjugal partnership), all of whom are signatories thereto), and without contravention of any legal, regulatory, corporate, or other requirement.   Each party to the Cacimar Agreement has acknowledged and is hereby deemed to acknowledge its voluntary execution and the binding effect of the Cacimar Agreement.   Accordingly, the Cacimar Agreement is approved.
>
> …
>
> The Non-Compete Agreement is an integral component of the global settlement of issues by and among the Purchaser, the Additional Disclosure Entities, FirstBank, and the PdR Group Members related to the Purchased Assets and provides certainty with respect to issues related to the Sale.   The Non-Compete Agreement has been validly executed, with full corporate authority by each party thereto (and, for the avoidance of doubt, Mr. Daniel Shelley has and is hereby deemed to have full corporate authority to execute the Non-Compete Agreement on account of the PdR Group Members and the Additional Disclosure Entities (including Mr. Shelley's spouse, and their conjugal partnership), all of whom are signatories thereto), and without contravention of any legal, regulatory, corporate, or other requirement. Each party to the Non-Compete Agreement has acknowledged and is hereby deemed to acknowledge its voluntary execution and the binding effect of the Non-Compete Agreement.   Accordingly, the Non-Compete Agreement is approved.

Confirmation Order, (X), (Y).

---

[9] See Cacimar Agreement, [1].

CHAR2\1568370v1

**(iv)** **Mr. Shelley's Concealment of His Controlling Interest in Certain Radius Property, and Recent Threats to Violate the Plan Injunction and Non-Compete Agreement**

20.     On January 10, 2014, it was brought to the attention of the Purchaser that a public auction of a certain parcel of Radius Property (the "Undisclosed Radius Property"), which is adjacent to the Purchased Assets, has been scheduled for February 5, 2014 (the "February 5 Auction"), at the request of one of the Additional Disclosure Entities, specifically MMI, in the case of Medio Mundo, Inc. v. Amparo Rivera et als., civil case no. NSCI200200275 (the "PR Case"), before the Puerto Rico Court of First Instance, Fajardo Part (the "PR Court").

21.     The Purchaser is informed by counsel that the record of the PR Case reflects that the case commenced with a complaint for preliminary injunction and others, filed by MMI on October 8, 1993. Pursuant to MMI's request, the PR Court issued an Order and Writ, prohibiting the defendant in the PR Case from transferring the Undisclosed Radius Property, on December 27, 2010, which was recorded in the Registry of the Property, as Note A, on July 5, 2012. On July 11, 2012, the PR Court entered judgment, condemning defendants to pay approximately $612,000 in favor of MMI (the "MMI Judgment", enclosed herein as Exhibit D). Thereupon, pursuant to MMI's request, on April 30, 2013, the PR Court entered an Order for execution of judgment, and specifically, for the sale of the Property in public auction. The marshal of the PR Court (the "PR Marshal") issued a notice scheduling the Undisclosed Radius Property auction for February 5, 2014 (the "Auction Notice", enclosed herein as Exhibit E).

22.     The entry of the Order for execution of judgment, requested by MMI, on or about April 30, 2013, was contemporaneous with the Sale transaction of the Marina, since the Term Sheet and additional agreements were executed on April 18, 2013, and the Confirmation Order was entered and the Sale was consummated on May 30, 2013. Notwithstanding, Mr.

14

Shelley and MMI, as an Additional Disclosure Entity, failed to disclose such information related to the Undisclosed Radius Property.

23.     The Undisclosed Radius Property is within a five (5) mile radius of Property #2, as defined in the Additional Disclosure Entity Representations and Warranties. Accordingly, the Undisclosed Radius Property is, unquestionably, Radius Property within the meaning of such term in the Additional Disclosure Entity Representations and Warranties.

24.     As set forth in the Additional Disclosure Entity Representations and Warranties, as a condition to the Purchaser's closing and funding of the Sale transaction, the Additional Disclosure Entities, including Mr. Shelley and MMI, were obligated to disclose to the Purchaser all Radius Property in which any of the Additional Disclosure Entities had direct or indirect control or ownership of.  However, although Mr. Shelley and MMI had knowledge of the above information before the execution of the Additional Disclosure Entity Representations and Warranties, the same was not disclosed to the Purchaser.

25.     The failure to disclose the information related to the Undisclosed Radius Property constitutes a willful violation of the Additional Disclosure Entity Representations and Warranties. Further, the prohibition to transfer the Undisclosed Radius Property, which is otherwise free and clear of liens, together with the entry of judgment in favor of MMI, and the request for execution thereof, through the February 5 Auction, in fact, grants MMI, and through MMI, Shelley, actual control of the disposition or ultimate title or future ownership of the Undisclosed Radius Property.

26.     Further, the Additional Disclosure Entities' failure to disclose the Undisclosed Radius Property, as part of its representations and warranties, is a breach of the good faith duty to make disclosure in contract negotiations.

15

27.     If the Additional Disclosure Entities had properly disclosed the Undisclosed Radius Property, the Purchaser would have included the Undisclosed Radius Property, or any rights in connection thereto, as part of the Purchased Assets.  The inclusion thereof would be based on the Purchaser's express intention to avoid the interference of the Debtor, or any Mr. Shelley-related entity, with the operations of the Marina, as set forth in the Non-Compete Agreement, based on a case-by-case analysis and evaluation of each property, so the Purchaser could make such review and determination in advance of the Closing of the Purchased Assets.

28.     The Purchaser has conferred with Defendants in attempts to reach a consensual resolution of this matter, in an effort to avoid unnecessary litigation, but, as of this filing, the Purchaser has not received confirmation that neither MMI or Mr. Shelley intends to seek to acquire title to the Undisclosed Radius Property through the February 5 Auction, but the response has been to the contrary.

29.     Mr. Shelley, either on his own behalf, or through MMI, or others, directly or indirectly, on his behalf or for his benefit, has threatened to appear at the auction in the PR Case and credit bid in order to obtain title of the Undisclosed Radius Property.

30.     The intended actions of Mr. Shelley and/or MMI constitute a breach of the obligations and the representations and warranties under the Additional Disclosure Entity Representations and Warranties and the Non-Compete Agreement.

16

## CAUSES OF ACTION

**A.    FIRST CAUSE OF ACTION – VIOLATION OF PLAN INJUNCTION AND NON-COMPETE AGREEMENT – REQUEST FOR INJUNCTIVE RELIEF TO ENFORCE PLAN INJUNCTION AND NON-COMPETE AGREEMENT PURSUANT TO CONFIRMATION ORDER AND SECTION 105 OF THE BANKRUPTCY CODE**

31.    The Purchaser restates and incorporates by reference the allegations contained in the preceding paragraphs.

32.    The Confirmation Order approved the Non-Compete Agreement and the Additional Disclosure Entity Representations and Warranties.  The Plan Injunction enjoins interference with the Plan.  Accordingly, violation of the Non-Compete Agreement is a violation of the Plan Injunction.

33.    Mr. Shelley and MMI have threatened to seek to acquire title to the Undisclosed Radius Property at the February 5 Auction, in contravention of the Non-Compete Agreement and the Additional Disclosure Entity Representations and Warranties.

34.    In the event that Mr. Shelley (personally or through any entity under his control) or MMI were to do so, the Purchaser will not have realized the benefit of the bargain for which the Purchaser acquired the Purchased Assets, as the Purchaser's acquisition thereof was expressly conditioned upon Mr. Shelley's lack of any interference therewith.

35.    As the Confirmation Order approved the Non-Compete Agreement, and Mr. Shelley has threatened to violate the Non-Compete Agreement, the threat of Mr. Shelley and MMI in this regard constitutes a violation of the Plan Injunction, which by its terms requires all parties' (including Mr. Shelley's) compliance with the terms and provisions of the Plan and the Confirmation Order.

36.    The Purchaser respectfully requests the Court to order Mr. Shelley (personally and through any entity under his control) and MMI to comply with the Non-Compete

CHAR2\1568370v1

Agreement, and, accordingly, to immediately cease and desist from performing any and all actions in violation of the Confirmation Order that approved the Non-Compete Agreement and the Additional Disclosure Entity Representations and Warranties.

37.     The threatened actions of Mr. Shelley, either on his own behalf, or through one or more of the Additional Disclosure Entities, including MMI, if permitted to proceed on February 5, 2014, as so threatened by Mr. Shelley, will cause irreparable harm to the Purchaser in its ownership and operation of the Purchased Assets.

38.     Absent the grant of the remedy requested herein, the Purchaser will suffer irreparable loss and damage due to the threatened actions of Mr. Shelley, which contravene the existing Plan Injunction and the Confirmation Order, including certain Definitive Documentation approved by the Court pursuant thereto. Accordingly, the Purchaser does not have an adequate remedy at law, requiring the issuance of injunctive relief.

39.     Pursuant to Fed.R.Civ.P. 65, made applicable by Fed.R.Bankr.P. 7065, the Purchaser further requests that the Court enter a temporary restraining order and a preliminary injunction, and thereafter, a permanent injunction, enforcing and giving effect to the Plan Injunction, and the Court-approved Non-Compete Agreement, specifically enjoining Shelley (personally and directly or indirectly through any person, agent, representative or entity under his direct or indirect control or direction) and MMI from acquiring the Undisclosed Radius Property, by entering an order staying the February 5 Auction, pursuant to the powers vested upon the Court to enforce its own orders by virtue of the 11 U.S.C. § 105(a), or, in the alternative, prohibiting Shelley personally and MMI (directly or indirectly through any person, agent, representative or entity under his direct or indirect control or direction) from credit bidding at the February 5 Auction. Travelers Indem. Co. v. Bailey, 557 U.S. 137 (2009).

18

**B.**     <u>**SECOND CAUSE OF ACTION – SPECIFIC PERFORMANCE**</u>

        40.     The Purchaser restates and incorporates by reference the allegations contained in the preceding paragraphs.

        41.     Mr. Shelley and MMI failed to disclose the Undisclosed Radius Property and now have threatened to seek to acquire title to the Undisclosed Radius Property at the February 5 Auction.

        42.     The Non-Compete Agreement sets forth that the PdR Executives, the PdR Group Members, and the Additional Disclosure Entities (including Mr. Shelley and MMI), are prohibited from interfering or attempting to participate in the management, operations or other matters pertaining to the Marina or the Purchased Assets.

        43.     The Additional Disclosure Entity Representations and Warranties imposed upon the Additional Disclosure Entities, including Shelley and MMI, the duty to disclose the Undisclosed Radius Property.

        44.     In addition, Mr. Shelley's failure to disclose his interest in the Undisclosed Radius Property smacks of intentional and deliberate concealment, and bad faith.

        45.     The Purchaser respectfully requests that the Court enter an order instructing Mr. Shelley personally and MMI (directly or indirectly through any person, agent, representative or entity under his direct or indirect control or direction) to comply with the obligations under the Non-Compete Agreement, and, specifically, prohibiting Mr. Shelley personally and MMI (directly or indirectly through any person, agent, representative or entity under his direct or indirect control or direction) from asserting any rights in connection to the Undisclosed Radius Property, including prohibiting them from credit bidding at the February 5 Auction.

19

46.     Further, in the event Mr. Shelley personally or MMI (directly or indirectly through any person, agent, representative or entity under his direct or indirect control or direction) were to do so,  the whole intention of the obligations under the Additional Disclosure Entity Representations and Warranties, that induced the Purchaser to enter into the Marina transaction, would be at a loss, as the failure to disclose would result in the control by Mr. Shelley of property adjacent to the Purchased Assets, that would circumvent the particular aim of the Additional Disclosure Entity Representations and Warranties and the Non-Compete Agreement, and the Confirmation Order.

47.     Additionally, the Purchaser respectfully requests that the Court find Mr. Shelley and MMI in contempt of Court, by reason of the concealment of the Undisclosed Radius Property, in violation of the Confirmation Order that approved the Non-Compete Agreement and the Additional Disclosure Entity Representations and Warranties.

48.     Further, pursuant to 31 P.R. Laws Ann. §§ 3373 et al., the Purchaser respectfully requests the Court to order Mr. Shelley and MMI to comply with the Non-Compete Agreement and the Additional Disclosure Entity Representations and Warranties, and, accordingly, to immediately cease and desist from performing any and all actions in violation of the Confirmation Order that approved the Non-Compete Agreement and the Additional Disclosure Entity Representations and Warranties.

WHEREFORE, the Purchaser respectfully requests that the Court (A) enter a TRO and a Preliminary Injunction against each of the Defendants (pending the final determination of the causes of action set forth in the Verified Complaint and entry of a permanent injunction in favor of the Purchaser), enforcing and giving effect to the Plan Injunction (defined above), the Confirmation Order, and the Non-Compete Agreement,

20

specifically (i) enjoining and staying the February 5 Auction (defined above); (ii) restraining and enjoining the Defendants (including, without limitation, Mr. Shelley personally and directly or indirectly through any person, agent, representative or entity under his direct or indirect control or direction, including MMI), from acquiring the Undisclosed Radius Property, pursuant to the powers vested upon the Court to enforce its own orders by virtue of the Court's inherent power to do so and/or 11 U.S.C. 105(a); (iii) in the alternative, prohibiting Mr. Shelley (personally and directly or indirectly through any person, agent, representative or entity under his direct or indirect control or direction, including MMI) from credit bidding at the February 5 Auction; and/or (iv) in the alternative, directing the Defendants to take any and all actions necessary to adjourn the February 5 Auction indefinitely, pending this Court's final disposition of this Adversary Proceeding; (B) enter an order directing the Defendants to comply with their obligations under the Non-Compete Agreement, the Additional Disclosure Entity Representations and Warranties, the Cacimar Agreement; (C) find the Defendants in contempt of Court for the willful violation of the Confirmation Order; and (D) grant the Purchaser such other and further relief as is just and proper.

CHAR2\1568370v1

Dated:   February 3, 2014
         San Juan, Puerto Rico

**FERNÁNDEZ , COLLINS, CUYAR & PLÁ**
P.O. Box 9023905
San Juan, PR 00902-3905
Telephone: (787) 977-3772
Facsimile:  (787) 977-3773
E-mail: jcc@fccplawpr.com

/s/Juan A. Cuyar Cobb
Juan A. Cuyar Cobb
USDCPR 212401

**CORREA-ACEVEDO & ABESADA LAW OFFICES,
P.S.C.**
Centro Internacional de Mercadeo
Torre II – Suite 407, #90 Carr. 165
Guaynabo, PR  00968
Telephone:  (787) 273-8300
Facsimile:  (787) 273-8371
E-mail:  ra@calopsc.com

/s/Roberto Abesada-Agüet
Roberto Abesada-Agüet
USDCPR 216706

**MOORE & VAN ALLEN PLLC**
Suite 4700
100 North Tryon Street
Charlotte, NC  28202
Tel:  (704) 331-1046
Fax:  (704) 378-1909
Email:  zacharysmith@mvalaw.com

/s/ Zachary H. Smith*
Zachary H. Smith*

*Licensed in New York only.
Not licensed in North Carolina.

*Admitted Pro Hac Vice*

22

## STATEMENT UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. § 1746

I, Nicholas Prouty, of legal age, married, Chief Executive Officer of PDR Acquisition LLC (and the other Purchaser affiliates as defined in the Confirmation Order), and resident of San Juan, Puerto Rico, hereby state under penalty of perjury:

1.     My personal circumstances are the aforementioned.

2.     I am the Chief Executive Officer of the Purchaser.

3.     I have read the preceding Verified Complaint, and I have personal knowledge that the allegations contained in the same are true and correct.

4.     To the best of my knowledge and information, neither Daniel W. Shelley nor Sonia Diaz-Asencio are minors, incompetent, or active in the military service of the United States of America.

In San Juan, Puerto Rico, on February 3, 2014.

Chief Executive Officer
PDR Acquisition LLC

23

CHAR2\1568345v1

## STATEMENT UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. § 1746

I, Robert L. Pressman, of legal age, married, Chief Executive Officer of Triton Equity Partners LLC, and resident of Suffolk County, New York, hereby state under penalty of perjury:

1.     My personal circumstances are the aforementioned.

2.     I am the Chief Executive Officer of Triton Equity Partners LLC, exclusive financial advisor and investment banker to the Purchaser in connection with the Sale.

3.     I have read the preceding Verified Complaint, and I have personal knowledge that the allegations contained in the same are true and correct.

4.     To the best of my knowledge and information, neither Daniel W. Shelley nor Sonia Diaz-Asencio are minors, incompetent, or active in the military service of the United States of America.

In Suffolk County, New York, on February 3, 2014.

_____
By:  LA Bob, Inc., its CEO of
the Managing Member of
Triton Equity Partners, LLC

CHAR2\1568345v1